UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,          CRIMINAL NO. 05-80955

      v.

                                  HONORABLE AVERN COHN

D- 26 JACOB ARABOV,

                  Defendant.

                                  /

**GOVERNMENT'S ANSWER AND BRIEF REGARDING
DEFENDANT"S MOTIONS FOR SEVERANCE, TRANSFER
OF TRIAL AND DISMISSAL OF COUNT 10**

Defendant Arabov has brought three motions seeking 1) severance, 2) transfer of his trial

to the southern District of New York and 3) dismissal of  Count Ten.[1] Answers to these motions

will be made in the order noted.

## 1. SEVERANCE

Defendant seeks severance largely on the basis of the assumed lengthy trial if all

defendants were tried in one proceeding, the prejudice which may occur from the extensive

proofs of the drug conspiracy and the fact that he intends to admit the existence of the drug

conspiracy which may bring him into conflict with his co-defendants.  In order to make this case

---

[1]Defendant also moved for a bill of particulars. A separate response was made to this
motion.

more manageable, the government will agree to a severance and joint trial for defendant and any

of the 5 co-defendants whom are similarly charged only in Count 10.[2]

## II. TRANSFER OF VENUE

Defendant requests a transfer of venue to the Southern District of New York pursuant to

Fed.R.Crim. P. 21(b).[3]  The resolution of a Rule 21(b) motion involves a "realistic approach, fair

consideration and judgment of sound discretion on the part of the district court."  *United States v.*

*Zylstra,* 713 F.2d 1332, 1336 (7th cir. 1983).

In *United States v. Culoso*, 461 F.Supp 128, 136,137 (S.D.NY 1978) the court quoting in

part *United States v. United States Steel Corp*. 233 F.Supp 154 (S.D. N.Y. 1964) stated:

> As most frequent with us, we return here again to Judge Weinfeld who has
> described the general approach to motions such as these in *United States v. United*
> *States Steel Corp*., supra, 233 F.Supp. at 157:
>
> > At the outset it must be recognized that every litigation,
> > particularly a criminal prosecution, imposes burdens upon a
> > defendant and brings in its wake dislocation from normal
> > occupational and personal activities.  The burdens imposed and
> > inconvenience suffered vary from case to case and from defendant
> > to defendant within a case; it is a matter of degree depending upon
> > a variety of circumstances.  In this respect this case is no different
> > from any other.  The Court is satisfied that no matter where this
> > trial is conducted, there will be inconvenience to the parties, their
> > executives, their counsel and their witnesses.  But mere
> > inconvenience, interference with one's routine occupational and
> > personal activities, and other incidental burdens which normally
> > follow when one is called upon to resist a serious charge do not

---

[2]These defendants are Neil Bahura, Gwendolyn Browen, Ronald Canyon, Charles
Flenory and Larry Van Steele.

[3]Fed.R.Crim.P. 21(b) states:
For the convenience of parties and witnesses, and in the interests of justice, the
court upon motion of the defendant may transfer the proceeding as to him or any
one or more of the counts thereof to another district.

*ipso facto* make the necessary showing that a transfer is required in the interest of justice.  As a general rule a criminal prosecution should be retained in the original district.  To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal.

The standard set out in *United States Steel Corp*. was expanded in *United States v. Jones*, 43 F.R.D. 511, 514 (D.D.C.), *Mandamus denied*, *Jones v. Gasch*, 131 U.S.App.D.C. 254, 404 F.2d 1231 (1967), Cert. denied, 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968):

". . .  sound judicial administration and the need for efficient handling of the prosecuting attorney's work load suggest that only rarely and for good cause should a prosecution be withdrawn by a judicial act from the court in which it was brought . . ."  43 F.R.D. at 514.

All relevant cases dealing with the factors to be considered in a Rule 21(b) agree that there

are 10 factors as set forth in *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 243-4 (1964):

(1) location of . . .  defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer."

The proper method for analyzing the *Platt* factors has been stated in *United States v. Spy*

*Factory, Inc*., 951 F.Supp 450, 455-456 (S.D.N.Y. 1997):

A Court should weigh the ten *Platt* factors against one another and against the backdrop of doing what is in the overarching interest of justice.   A Court should not give any one factor preeminent weight nor should it assume that the quantity of factors favoring one party outweighs the quality of factors in opposition.   *See United States v. Maldonado-*456 *Rivera,* 922 F.2d 934, 966 (2d Cir.1990) ("No one of these considerations [the *Platt* factors] is dispositive, and 'it

remains for the court to try to strike a balance and determine which factors are of greatest importance.' ") (citing *United States v. Stephenson,* 895 F.2d 867, 875 (2d Cir.1990)), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991). Rather, a Court should look to all of the factors and determine whether the interests of justice would be better served by changing the trial venue.   In essence, "[t]he determination of whether a particular case calls for transfer depends upon the peculiar facts and circumstances of that case." *United States v. Posner,* 549 F.Supp. 475, 477 (S.D.N.Y.1982).

A review of the *Platt* factors in the instant case establishes that this case should not be sent to the Southern District of New York.

### 1. Residence of defendant

In the case at bar, it is clear that the defendant lives in the Southern District of New York.

### 2. Location of Witnesses

The second factor, the location of witnesses is difficult to evaluate since the defendant has provided the court but not the government with a witness list. There is no indication that any of the witnesses would not appear if called in Detroit or that defendant is unable to pay for their attendance.  If money is, in fact, a relevant issue (which is highly unlikely given defendant's description of his multi-million dollar business) then  defendant could surely obtain CJA funds to assist him in obtaining these witnesses.  *Spy Factory*, *supra* at 456. Further, depending on the nature of the testimony, there is no guarantee that this court would necessarily allow all of the defense witnesses to testify insofar as their testimony might be unnecessarily cumulative or irrelevant.[4]   To the extent that defendant is concerned about the length of time his witnesses will

---

[4]For instance, defendant asserts that he is going to call several of his clients to testify about their relationship with defendant and his business.  It is not clear how his relationships with presumably legitimate clients is relevant to whether or not he acted illegitimately with other clients.  The government is not asserting that defendant has no legitimate business or that his business is itself a criminal enterprise.

have to be in Detroit, the government's agreement to sever the defendant from the drug defendants dramatically decreases the duration of the trial and makes it much easier to schedule witnesses. Indeed, it is likely that the trial schedule can accommodate most witnesses (particularly the character witnesses) to the point that they would, at best, have to stay one night in Detroit. *See United States v. Dole*, 601 F.Supp 430, 434 (E.D.N.Y. 1984). Finally, it is even possible to arrange testimony by teleconference so no defense witness need appear in person.

As to the government witnesses, several live in this district and others (including those incarcerated) are in districts other than the Southern District of New York. Thus, all of the government witnesses would be from "out of town" if venue is transferred to New York.

### 3. Location of Events

The location of events at issue, contrary to defendant's claim are not confined to New York. First, the charged conspiracy is nationwide. Thus, there were relevant conspiratorial acts done in many other venues including those directly involving defendant Arabov. Secondly, as defendant notes, his business is itself international in scope. As such, he was and is aware that he was dealing with persons who are not native to New York and that his actions had consequences far beyond the confines of Manhattan Island. In any event, Manhattan cannot be said to be the "nerve center" of the charged conspiracy, a fact which mitigates against changing venue. *See Spy Factory*, *Supra* at 457.

### 4. Location of Documents

As to the location of documents, the documents relevant to the government's case are in Detroit. Although documents which may be relevant to defendant may or may not be currently in Detroit, modern technology generally renders this a non-issue particularly where, as here, the

5

documentary evidence is relatively limited.  *United States v. Oster*, 580 F.Supp 599,602

(S.D.W.Va. 1984), *Spy Factory, supra* at 457-458.

### 5. Disruption of Defendant's Business

Defendant claims that his business will be adversely affected by trial in Detroit.  As noted

above, the severance will greatly lessen the time defendant has to remain in this district.  Further,

it is clear that defendant's daily presence at his business is not required.  This is demonstrated by

the fact that on several occasions during the pendency of this case he has sought and/or been

granted permission to leave the country for up to one week to conduct his business.  In any

event, defendant's business is far from failing and he has not demonstrated that telephone, fax or

e-mail is insufficient to maintain contact with his business. *See Spy Factory*, *supra*  at 458-459;

*Oster, supra* at 602.

### 6. Expense to the Parties

As to the expense to the parties, defendant alleges that "travel time and expense during a

lengthy trial" are relevant to deciding the transfer issue.  As noted above, the agreement to sever

makes this proceeding substantially shorter than would be the case without the severance.

### 7. Location of Counsel

It is clear that defense counsel is from New York and that the government attorneys are

from the Detroit area.

### 8. Relative Accessibility of Trial Place

Both Detroit and New York are major cities readily accessible by aircraft. Indeed, given

the well known traffic congestion in New York, particularly on Manhattan Island, Detroit is

more easily accessed than is New York.

9. Docket Condition in each District

Whatever the overall docket conditions might be, it is difficult to believe that any judge in the Southern District of New York has a docket which is in better condition than this court's. Based on long years of experience, government attorneys and defense counsel in this district are well aware that delays in criminal trials are rarely, if ever, caused by a congested docket.

10. Unique Factors

If defendant is allowed to change venue this precedent may well result in similar requests being made by other out-of-district defendants, which if granted, would lead to any number of repetitive trials. Several of the witnesses against Arabov will have to testify twice as a result of the agreed upon severance. Since these witnesses are knowledgeable about virtually every aspect of the charged conspiracies, they will have to testify in every trial which would be created by further severances or changes in venue which could result if Arabov's motion is granted. This is a factor which weighs heavily in favor of not allowing venue for defendant Arabov to be changed. As stated in *United States v. Zylstra*, 713 F.2d 1332, 1336 (7th Cir. 1983) :

> If the court had granted the defendant's initial motion for change of venue it would in all probability have resulted in the severance of several trials into multiple trials in various districts throughout the country involving the other codefendants.  Such a multiplication of litigation would have resulted in great inconvenience to all the witnesses (repeated appearances in various and sundry judicial districts) as well as greater expense.  Courts must be mindful of these difficulties as well as the actual expense and waste of court time in our severely burdened and overtaxed federal judicial system.  "Criminal defendants have no constitutional right to have a trial in their home districts, nor does the location of the defendant's home have 'independent significance in determining whether transfer to that district would be in the interest of justice.' "  *United States v. McManus,* 535 F.2d 460, 463 (8th Cir.1976), *cert. denied,* 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977) (*quoting Platt v. Minnesota Mining and Manufacturing Co.,* 376 U.S. 240, 245-46, 84 S.Ct. 769, 772-71, 11 L.Ed.2d 674 (1964)).

*See also United States v. Wheaton*, 463 F.Supp 1073, 1078 (S.D.N.Y. 1979).

In the instant case, the government is clearly agreeable to assisting in making this case manageable insofar as multiple trials may be  required but it should not be required that the government try this case is several other venues for the convenience of the defendants.

Finally, contrary to defendant's contention, the inconvenience to the government is a proper factor in any decision to change venue pursuant to Rule 21.  *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977); *United States v. Briscoe*, 792 F.Supp 1,4 (D.C. 1992).

Based on the above, there is no compelling reasons to find that the interests of justice would be better served by changing venue or that there is good cause to withdraw this prosecution from the court in which it was brought.  Accordingly, defendant's motion to change venue should be denied.

### III. DISMISSAL OF COUNT TEN

Defendant requests dismissal of Count Ten on the grounds that it is duplicitous in that it charges multiple conspiracies.

The relevant law concerning this issue is contained in the following portion of *United States v. Maldonado-Rivera,* 922 F.2d 934, 962-963 (2nd Cir. 1990):

> [T]he question of whether one or more than one conspiracy has been established is a question of fact for a properly instructed jury, *see, e.g., United States v. Orozco-Prada,* 732 F.2d 1076, 1086 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984); *United States v. Bagaric,* 706 F.2d 42, 63 n. 18 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Alessi,* 638 F.2d 466, 472 (2d Cir.1980), "if only one conspiracy has been alleged and proved the defendants are not entitled to a multiple conspiracy charge," *United States v. Martino,* 664 F.2d 860, 875 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *see United States v. Ocampo,* 650 F.2d 421, 429-30 (2d Cir.1981); *United States v. Cambindo Valencia,* 609 F.2d at 621 n. 15. ...

The essence of any conspiracy is, of course, agreement, and "in order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Martino,* 664 F.2d at 876; *see also United States v. Cambindo Valencia,* 609 F.2d at 625-27....The coconspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan. *United States v. Bagaric,* 706 F.2d at 63. The goals of all the participants need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes. *United States v. Beech-Nut Nutrition Corp.,* 871 F.2d at 1192; *United States v. Heinemann,* 801 F.2d 86, 92 n. 1 (2d Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1308, 94 L.Ed.2d 163 (1987). Nor do lapses of time, changes in membership, or shifting emphases in the locale of operations necessarily convert a single conspiracy into multiple conspiracies. *See United States v. Martino,* 664 F.2d at 876-77; *United States v. Vila,* 599 F.2d 21, 24 (2d Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979). Indeed, it is not necessary that the conspirators know the identities of all the other conspirators in order for a single conspiracy to be found, *see, e.g., Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256-57, 92 L.Ed. 154 (1947); *United States v. Gleason,* 616 F.2d 2, 16 (2d Cir.1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980); *United States v. Vila,* 599 F.2d at 24, especially where the activity of a single person "was central to the involvement of all," *United States v. Moten,* 564 F.2d 620, 625 (2d Cir.), *cert. denied,* 434 U.S. 942, 98 S.Ct. 438, 54 L.Ed.2d 304 (1977).

Finally, a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance. *See United States v. Tramunti,* 513 F.2d at 1106. Thus, the mere fact that an operation consists first of a robbery, planned and executed with the aid of an insider, and then of concealment of the money, executed by persons other than the insider, does not necessarily entitle the defendants to a multiple-conspiracy charge. *See United States v. Potamitis,* 739 F.2d 784 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). ...

Count Ten of the indictment charges 29 individuals with agreeing with each other to launder monetary instruments. It is clear from the text of Count Ten that the core individuals in the conspiracy were Terry Flenory and Demetrius Flenory and that their activities were central to the involvement of all of the co-conspirators. It is also clear that the several paragraphs detailing the acts of the various conspirators indicate a variety of acts designed to advance the conspiracy,

9

all of which are consistent with the overall goal of the conspiracy and non of which are at cross-purposes to that goal.

The fact that defendant Arabov may not have known all of the other defendants or known every aspect of the conspiracy does not render this count duplicitous.[5]   Further, a single conspiracy can  be established by evidence that a conspirator knew *or had reason to know* that others were involved in a broad project to violate the law, in this case to launder monetary instruments.  *United States v. Sureff*, 15 F.3d 225 (2nd Cir. 1994).

Thus, on the basis of the principles noted in  *Maldonado-Rivera*, Count Ten on it's face charges a single conspiracy and there is no legal basis for it to be dismissed.  In any event, as noted above, this entire question is one of fact which must be left to the jury.

Although this issue is framed by defendant as an issue whether or not Count Ten charges a single conspiracy, it can also be classified as an attack on the sufficiency of the evidence underlying the count.  This is supported by defendant's assertion that there is a question "as to just how Jacob Arabov could be legitimately named in that Conspiracy."  Affidavit in Support of Motions at 33.  There is well established authority that an indictment cannot be challenged on the basis that there was insufficient evidence to support the grand jury's finding of probable cause.

In *United States v. Warner*, 690 F.2d 545,554 (6th Cir. 1982) the court noted that:

_____

[5] Defendant's brief contains the statement that there will be no evidence that defendant "even knew any of the other individuals charged in Count Ten of the Indictment."  Affidavit in Support of Motion at 4.  This is surely an unintended misstatement of fact since records obtained from the defendant and the statements of witnesses submitted to defendant will be presented as evidence that defendant knew several of his co-defendants.

The Supreme Court has stated ... that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence...."  *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *accord*, *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Short*, 671 F.2d 178, 181-83 (6th Cir. 1982), *cert. denied*, --- U.S. ----, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982).

Accordingly, there is no legal basis upon which this court can grant defendant's motion to dismiss to the extent that it can be construed as a motion to dismiss on the basis of insufficient evidence to support the Grand Jury's decision to indict.

Finally, defendant alleges that a remedy for a duplicitous indictment is to require the government to reformulate the count.  As noted above, Count Ten is proper on it's face and there is nothing to reformulate.  Nonetheless, even if this court were to order such a reformulation, defendant is clearly in error in stating that this charge must be filed in the Southern District of New York  pursuant to the venue provision of 18 U.S.C.§1956(I).  This would be true if the defendant was charged with a substantive count.  However, defendant failed to acknowledge that 18 U.S.C.§1956(I) (2) allows venue for a conspiracy to be in any district where an act in furtherance of the conspiracy took place.  Acts relating to this conspiracy, including defendant Arabov's portion, took place in many judicial districts including the Eastern District of Michigan and therefore the charge of conspiracy lodged against defendant Arabov can be brought in this district.

11

Accordingly, for the reasons stated above, defendant's motion to dismiss Count Ten should be denied.

Respectfully submitted,

STEPHEN J. MURPHY
United States Attorney

s/DAWN N. ISON
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Ste. 2001
Detroit, MI  48226
Phone: (313) 226-9567
E-Mail: dawn.ison@usdoj.gov
Bar No. P43111

s/MICHAEL C. LEIBSON
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Ste. 2001
Detroit, MI  48226
Phone: (313) 226- 9615
E-Mail: michael.leibson@usdoj.gov
Bar No. P24092

Dated: December 4, 2006

12

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2006, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

N/A

I further certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

Benjamin Brafman
Andrea L. Zellan
Benjamin Brafman Brafman & Assoc.
767 Third Avenue 26th Floor
New York, NY 10017

s/DAWN N. ISON
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Ste. 2001
Detroit, MI  48226
Phone: (313) 226-9567
E-Mail: dawn.ison@usdoj.gov
Bar No. P43111

s/MICHAEL C. LEIBSON
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Ste. 2001
Detroit, MI  48226
Phone: (313) 226- 9615
E-Mail: michael.leibson@usdoj.gov
Bar No. P24092