UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 05-80955

v.                                               Judge Avern Cohn

JACOB ARABOV (D-26),

        Defendant.

_____/

**ORDER AND MEMORANDUM (1) DENYING TRANSFER OF VENUE UNDER 18 U.S.C. § 1956(i); AND (2) DENYING TRANSFER OF VENUE UNDER FED. R. CRIM. P. 21(b)**

**I. Introduction**

This is a criminal case. Defendant Jacob Arabov (Arabov), a.k.a. "Jacob the Jeweler", is charged in Count 10 of the redacted indictment with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956 et seq. Arabov asserts that Count 10 charges a legally deficient duplicitous money laundering conspiracy, and should be dismissed or alternatively reformulated and his case transferred to the Southern District of New York under U.S.C. § 1956(i). Arabov also moves to transfer the case under FED. R. CRIM. P. 21(b).

At a motion hearing on March 26, 2007 the Government agreed to separate trials for the four defendants named in the redacted indictment.[1] Accordingly the issue of

---

[1] The others named in Count 10 of the redacted indictment are Neil Jamil Bahura (charged with laundering money through the purchase of motor vehicles); Ronald Wayne Canyon (charged with laundering money through the purchase of winning lottery tickets), and Charles Edward Flenory (charged with laundering money by paying contractors to remodel a house).

1

whether the redacted indictment is duplicitous is moot.[2]  The remaining issues are whether the Court should transfer Arabov's case to the Southern District of New York under 18 U.S.C. § 1956(i) or FED. R. CRIM. P. 21(b).

For the reasons that follow, the Court finds that a transfer of the case under 18 U.S.C. § 1956(i) or FED. R. CRIM. P. 21(b) is not warranted; the motions are DENIED.

## II. Background

The Government alleges that Terry Lee Flenory and Demetrius Flenory (the Flenorys) headed a cocaine distribution organization headquartered in Detroit Michigan, and known as the Black Mafia Family (BMF).  The redacted indictment alleges that Arabov facilitated the Flenorys in laundering their drug sale proceeds by selling to them and to their nominees jewelry for cash and then failing to file or filing inaccurate IRS 8300 forms memorializing the transactions and not identifying the Flenorys as the actual persons on whose behalf the purchases were made.  See ¶ 2.

## III.  Analysis

### A.  Whether the Court Must Transfer Arabov's Case to the Southern District of New York Under 18 U.S.C. § 1956(i)

#### 1. Arabov's Argument

Arabov argues that the Government should only be allowed to try him in the Southern District of New York because 18 U.S.C. § 1956(i)(1) states that a prosecution for an offense under section 1956 may only be brought in:

> (A) any district in which the financial or monetary transaction is conducted; or

---

[2] The issue of whether Count 10 is duplicitous is also moot as to Bahura, Canyon, and Charles Flenory, who joined in Arabov's motion to dismiss.

> (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

Arabov says that the Southern District of New York is the only appropriate venue under section 1956(i)(1)(A) because all the alleged jewelry purchases and alleged failure to file (or correctly file) IRS 8300 forms occurred in his New York City store, Jacob & Co., or elsewhere in New York City. Arabov further argues that section 1956(i)(1)(B) does not apply because the Government does not allege that Arabov participated in any money transfers.

### 2. Resolution

The Government may try Arabov in the Eastern District of Michigan. 18 U.S.C. § 1956(i)(1) controls venue in cases where the Government has charged the defendant with the <u>substantive</u> offense of money laundering. Where, as is the case here, the Government charges the defendant with conspiring to launder money, section 1956(i)(2) provides that venue is appropriate "where venue would lie for the completed offense under paragraph (1), <u>or in any other district where an act in furtherance of the attempt or conspiracy took place</u>."

The Government says that the BMF was headquartered in the Detroit Metropolitan area, and that the drug proceeds Arabov laundered were generated in part from drug sales in this district. The Government also says that some of the drug money used to pay Arabov was loaded into vehicles in Detroit by BMF members. Finally, the government says these acts were integral to the furtherance of the conspiracy and took place in the Eastern District of Michigan. Under these circumstances the Eastern

District of Michigan is an appropriate venue for trial.

## B. Whether the Trial Should be Transferred to the Southern District of New York Under FED. R. CRIM. P. 21(b)

### 1. Standard

FED. R. CRIM. P. 21(b) allows for the discretionary transfer of venue:

> **For Convenience**. Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

In Platt v. Minnesota Mining & Mfg., 376 U.S. 240, 243-244 (1964), the Supreme Court held that the factors a court should weigh when ruling on a Rule 21(b) motion include the:

(a) location of defendant;
(b) location of possible witnesses;
(c) location of events likely to be in issue;
(d) location of documents and records likely to be involved;
(e) disruption of defendant's business unless the case is transferred;
(f) expense to the parties;
(g) location of counsel;
(h) relative accessibility of place of trial;
(i) docket condition of each district or division involved; and
(j) any other special elements which might affect the transfer.

### 2. Argument

#### a. Location of the Defendant

It is undisputed that Arabov and his family live in the Southern District of New York.

#### b. Location of the Possible Witnesses

Arabov's witness list[3] includes individuals he characterizes as "essential

---

[3] The list was filed under seal.

4

witnesses" -- mainly current and former Jacob & Co. employees whom Arabov says will testify to his sales practices and the industry customs.  Arabov says these witnesses all reside in or around New York City.  His witness list also includes "character witnesses" -- mainly celebrity clients whom Arabov says will testify to his business integrity and professionalism.  Arabov says that these witnesses maintain their "bases of operation" in New York City.  Arabov says that the location of his possible witnesses militates strongly in his favor because they will be required to spend several days traveling to and from Detroit, preparing to testify, and actually testifying.

The Government responds that there is no indication that any of Arabov's anticipated witnesses would not appear if called to Detroit.  Moreover, the Government says that the testimony of some of Arabov's anticipated character witnesses may be unnecessarily cumulative or irrelevant.  Further, the Government points out that their agreement to sever Arabov's trial significantly reduces the duration of time witnesses will have to spend in Detroit.  Alternatively, testimony may be arranged via teleconference.

With respect to its own witnesses, the Government argues that they would be from "out of town" if venue is transferred.  These witnesses include:  BMF members Arnold Boyd and Charles Parson who are from both from Detroit; Eric Bivens (residence unknown); DEA Task Force Officers Eric Zaber and Cindy Scott (residence unknown); Damon Thomas, a rap music producer who resides in California; Mark Whaley, an automobile broker who resides in Florida; and William Marshall, a BMF member currently in Florida.

5

### c.  Location of Events

Arabov argues that all the alleged conduct pertaining to the money laundering charge occurred at his New York City store, Jacob & Co, or in New York City. Additionally, Arabov notes that although much of the drug-related conduct took place outside New York, there is no allegation that Arabov participated in any of these events. Thus, the Eastern District of Michigan was no more the "nerve center" than were any of the other districts in which the drug transactions allegedly occurred.

The Government says that the relevant conspiratorial acts directly involving the defendant transpired in many districts, including the Eastern District of Michigan. In particular, the Government alleges that: the Flenory's arranged for money to be delivered to Arabov in Detroit; money from drug sales were loaded into vehicles in Detroit to be transported to Arabov; and the IRS 8300 forms that were incorrectly filled out were filed in Detroit.

Further, the Government points out that Arabov's business is international in scope, and that he was well aware that the consequences of his actions could reach far beyond New York.

### d.  The Location of the Documents

Arabov argues that he will need to review the documents that were seized from Jacob & Co., and that he may introduce thousands of documents maintained by the store, and that it would be more convenient for his attorneys to review the documents in their New York offices.

The Government says that the documents relevant to its case reside in Detroit because the IRS 8300 forms are required to be filed in Detroit, and because the

documents seized by Arabov are currently in Detroit.  Moreover, the Government points out that modern technology mitigates problems associated with document management.

### e.  Disruption of the Defendant's Business

Arabov asserts that his business will be negatively affected if his case is tried in Detroit because he will be unable to attend to the day-to-day operations.

The Government responds that the severance will significantly reduce the trial's duration.  In addition, the Government says that it is not necessarily essential for Arabov to be present at his store on a daily basis, as manifested by the fact that during the course of litigation, Arabov has sought and/or been granted permission to leave the country for up to a week at a time.  Finally, the Government notes that Arabov's business is far from failing and moreover, he has not demonstrated that other means of communication (e.g., telephone, fax, e-mail, etc.) would be insufficient

### f.  Expense to the Parties

Arabov asserts that his expenses would be substantially greater in Detroit than in New York because of the following costs: establishment of a law office, transportation costs, housing costs for the defense and their witnesses, and business losses.  Arabov says that the Government's additional costs would not be as great if the trial was held in New York because the U.S. Attorney's Offices routinely accommodate visiting prosecutors.  Furthermore, Arabov cites to several cases standing for the proposition that a defendant's wealth should not be a basis for deciding against a Rule 21(b) motion, and additionally, that the government is in a better position to bear additional expenses.  See United States v. Ferguson, 432 F.Supp.2d 559, 567 (E.D.Va. Apr. 10, 2006); United States v. Jessup, 38 F.R.D. 42, 46-47 (M.D.Tenn. 1965).

Again, the Government says that its agreement to sever will substantially shorten the trial and associated expenses.

### g.  Location of Counsel

The parties agree that defense counsel is from New York and that the Government attorneys are from Detroit.  Arabov points out however, that case law seemingly favors defendants in such cases since federal prosecutors should be "at home" anywhere in the United States.  <u>United States v. Benjamin</u>, 623 F.Supp. 1204,1212 (D.C.D.C 1985).

### h.  Relative Accessibility of Place of Trial

Arabov concedes that both Detroit and New York are easily accessible. Nevertheless, he asserts that relevant factors are considered, the Southern District of New York is clearly more accessible. <u>See</u> <u>United States v. Hurwitz</u>, 573 F.Supp. 547, 554 (S.D.W.Va. 1983) ("Mindful of the location of witnesses and counsel ...  the court finds that this factor militates in favor of transfer").

The Government responds that Detroit is more easily accessible, as evidenced by the well-known traffic congestion in New York.

### i. Docket Condition in Each District

The parties agree that the docket conditions in the respective districts should have very little or no merit in evaluating this motion.

### j. Other Special Elements

Arabov maintains that there are no special elements pertaining to this case.[4]

### 3. Resolution

Arabov's trial will not be transferred. The Court finds no good reason to transfer the case to the Southern District of New York. As noted by the court in <u>United States v. United States Steel Corp</u>, 233 F. Supp 154, 157 (S.D.N.Y 1964):

> At the outset it must be recognized that every litigation, particularly a criminal prosecution, imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities. The burdens imposed and inconvenience suffered vary from case to case and from defendant to defendant within a case; it is a matter of degree depending upon a variety of circumstances. In this respect this case is no different from any other. The Court is satisfied that no matter where this trial is conducted, there will be inconvenience to the parties, their executives, their counsel and their witnesses. But mere inconvenience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not *ipso facto* make the necessary showing that a transfer is required in the interest of justice. As a general rule a criminal prosecution should be retained in the original district. To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal.

The Government has articulated many reasons why the trial should be held in the Eastern District of Michigan including that: the BMF was headquartered in Detroit; many acts in furtherance of the conspiracy between Arabov and the Flenory's took place in Detroit; some of the Government's key witnesses are from Detroit; and the relevant

---

[4] The Government argued that transferring Arabov's case might lead to repetitive trials if the other out-of-district defendants asserted similar requests. This argument is moot as the Government has agreed to try all the defendants named in the redacted indictment separately.

9

documents which have been identified by the parties are already in Detroit.

Moreover, Arabov's motions were filed prior to the Government's agreement to try him separately. Trying Arabov separately will greatly reduce the time that out-of-state witnesses will need to spend in Detroit, and will reduce the hardships and expenses associated with preparing and conducting a trial in the Eastern District of Michigan. Considering these developments, the Court does not find that a trial in the Eastern District of Michigan would be so unduly burdensome that fairness requires a transfer to the Southern District of New York.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: March 29, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, March 29, 2007, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160